**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| ROBERT HOSSFELD, individually and on behalf of classes of others similarly situated, Plaintiff, | ) ) ) ) | Case No. |
| v. | ) ) | |
| ENHANCE HEALTH, LLC, Defendant. | ) ) ) ) | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      According to the Federal Trade Commission's December 2019 Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in recent years. Consumer complaints to the FTC about illegal calls have skyrocketed over the last 10 years, growing from about 63,000 per month in 2009 to an average of more than 315,000 per month in 2019.

2.      The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the FTC and the Federal Communications Commission. Consequently, private consumer enforcement actions, which Congress authorized when it enacted the Telephone Consumer Protection Act ("TCPA") in 1991, and incentivized when it provided for penalties per violation, play a critical role in combatting illegal telemarketing.

3.      Like millions of Americans, Plaintiff Robert Hossfeld has listed his telephone number on the National Do Not Call Registry ("DNC") for years, thus marking his number as off-limits for telemarketing sales calls under state and federal law. And like millions of Americans, Mr. Hossfeld receives unwanted telemarketing calls anyway. Here, despite listing his

number on the DNC Registry, agents of Defendant Enhance Health, LLC ("Enhance Health" or "Enhance") placed numerous calls to Mr. Hossfeld to pitch the sale of Enhance's supplemental health insurance. And despite the fact Mr. Hossfeld repeatedly told these agents to stop calling, the calls continued because Enhance fails to maintain adequate policies to ensure that its agents honor these requests.

4. Mr. Hossfeld brings this action under the federal Telephone Consumer Protection Act and Florida's state law TCPA counterpart on behalf of Classes of consumers who, like him, received Enhance telemarketing calls (1) placed using an automatic telephone dialing system ("ATDS") and artificial or prerecorded voice messages, (2) despite listing their numbers on the DNC Registry, and (3) despite specifically telling Enhance telemarketers to stop calling.

5. Class action procedures are especially appropriate to enforce the TCPA. The statute's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019).

## Parties

6. Plaintiff Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber and user for the residential cellular telephone number at issue.

7. Defendant Enhance Health, LLC has its headquarters in Fort Lauderdale, Florida. Enhance Health's call center is also based in Florida, and the calls Plaintiff received originated there.

2

8.      Enhance Health's CEO Matt Herman has deep experience with illegal telemarketing. Herman was the "upline" insurance agent for Michael Smith, Zach Cox and Sean Duffie, and worked directly with Scott Shapiro and Health Advisors of America, with regard to the largest robocall scheme in the history of the Federal Communications Commission. *In re John C. Spiller II*, 2021 WL 1056077 (Mar 8, 2021).

### Jurisdiction & Venue

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. because this action alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.   The state law claims arise from the same set of facts and circumstances as the federal claims. Indeed, they are based upon the same illegal telephone calls.

10.     Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2).  The amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Classes of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges nationwide Classes, which will result in at least one member of each Class residing in a state different from Defendant.

11.     Defendant is subject to personal jurisdiction in Florida because its headquarters and principal place of business are in Florida and this suit arises out of and relates to Defendant's contacts with this state.

12.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Enhance Health is a resident of this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's purposeful efforts

to generate business in this District through the illegal telemarketing to which Plaintiff's claims relate.

## Statutory Background

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     The TCPA was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

15.     Perhaps the most well-known aspect of the TCPA was the creation of the National Do Not Call Registry. By adding a telephone number to the Registry, a consumer indicates her desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

16.     The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

17.     The TCPA also requires companies to maintain internal do-not-call lists. The TCPA's regulations provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Such procedures must meet specific minimum standards, delineated in the regulation. Moreover, the FCC held long ago that

internal do-not-call requests must be tracked and honored among and between a seller and its various telemarketers:

> Once the consumer makes a company specific do-not-call request, whether to the company or third party, the company and its third party telemarketer may not call the consumer again on behalf of that company to make a telephone solicitation regardless of whether the consumer continues to do business with the company.

*In re TCPA*, 20 FCC Rcd. 13664, 13668 ¶ 7 (2005); *accord U.S. v. Dish Network, LLC*, 954 F.3d 970, 976 (7th Cir. 2020) (holding that sellers and their telemarketers must "coordinate" internal DNC lists under the FTC's Telemarketing Sales Rule, which is substantially identical to the TCPA); *cf.* 47 C.F.R. § 64.1200(d)(6) (DNC requests "must be honored for 5 years").

18.     The TCPA says that "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do not call request," 47 C.F.R. § 64.1200(d)(3), and prohibits all telemarketing calls unless there is an instituted, written policy reasonably designed to prevent calls to those who request not to receive them (i.e., members of the Classes herein).

19.     The TCPA's internal do-not-call rules require that sellers and their telemarketers honor consumer requests not to receive telemarketing calls. 47 C.F.R. § 64.1200(d). Any request not to be called must be shared among the seller, i.e., Enhance Health, and any entities that generate business for the seller through outbound calls. In other words, a request to one vendor must be "coordinated" so as to prevent all telemarketing calls on behalf of that seller. *In re TCPA*, 20 FCC Rcd. 13664, 13664-65 ¶ 1 (2005).

20.     Likewise, the Florida's Telephone Solicitation Act ("FTSA"), Fla. Stat § 501.059, as amended by Senate Bill No. 1120, intends to curb the invasion of privacy foisted upon consumers by unauthorized and automated telemarketing calls.[1]

21.     The FTSA requires "express written consent" to call Floridians using an ATDS.

22.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

23.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

## Facts

24.     Plaintiff has registered his residential cell phone number with the National Do Not Call Registry since at least August 25, 2015, and has repeatedly requested not to receive telemarketing calls from Enhance Health.

25.     Despite this, Plaintiff continues to receive telemarketing calls made by or on behalf of Enhance Health to that number, even though he has asked that they stop.

26.     The reason Plaintiff continues to receive calls is that Enhance Health's DNC policies, practices and procedures do not properly track the TCPA's requirements.

---

[1] The amendment to the FTSA became effective on July 1, 2021.

6

27.     Plaintiff had previously received numerous calls that were made by or on behalf of Enhance Health for the purpose of encouraging the purchase of its products and services, and on those calls he had repeatedly asked not to be called. Moreover, Plaintiff's phone number had been on Enhance Health's internal do-not-call list for several months.

28.     Because the Enhance Health calls Plaintiff receives utilize spoofed caller IDs that hide the identity of the caller or fail to identify Enhance Health until the call recipient proceeds sufficiently through the call, it is very difficult for Plaintiff to identify all Enhance Health calls he has received without further information. He expects that all Enhance Health calls to his phone will be identified through discovery.

29.     Nonetheless, some examples of calls Plaintiff received by or on behalf of Enhance Health include one from caller ID 254-307-3142 on March 10, 2021, at approximately 3:59 p.m.

30.     This call played a prerecorded message, identified the caller as "Senior Benefits," and solicited Plaintiff for a Medicare-related insurance plan.

31.     This call was made by or on behalf of Enhance Health; "Senior Benefits" is a fictitious name for Enhance Health or its telemarketing vendor.

32.     On information and belief, Plaintiff made a do-not-call request during this or an earlier call by or on behalf of Enhance Health.

33.     Plaintiff received another telemarketing call from caller ID 737-248-2877 on March 28, 2021, at 4:17 p.m., which identified the caller as Senior Benefits and solicited Plaintiff for Medicare-related insurance. The caller hung up after nearly a half-minute. This call was similarly made by or on behalf of Enhance Health.

34.     Plaintiff also received a telemarketing call from caller ID 254-326-4135 on March 31, 2021, at 1:41 p.m., which again identified the caller as Senior Benefits and solicited Plaintiff for Medicare-related insurance. This call was similarly made by or on behalf of Enhance Health.

35.     Plaintiff received another telemarketing call from caller ID 254-793-1956 on April 4, 2021, at 10:10 a.m., which similarly identified the caller as Senior Benefits and solicited Plaintiff for Medicare-related insurance. This call was made by or on behalf of Enhance Health.

36.     During this call on April 4, 2021, Plaintiff told the telemarketer that he did not want to be called.

37.     Nonetheless, Plaintiff received another telemarketing call from caller ID 254-822-9130 on May 17, 2021, at 5:24 p.m., which similarly identified the caller as Senior Benefits and solicited Plaintiff for Medicare-related insurance. This call was made by or on behalf of Enhance Health.

38.      Plaintiff received another telemarketing call from caller ID 254-597-6212 on March 24, 2022, at 11:33 a.m. This call was similarly made by or on behalf of Enhance Health.

39.     When Plaintiff answered, the telemarketer asked Plaintiff if he had Medicare and if he had supplemental insurance. Plaintiff replied "yes," and indicated that he had Blue Cross. The telemarketer then claimed to work with Blue Cross and Humana.

40.     Plaintiff asked for the telemarketer's company name, and the telemarketer said, "Senior Benefits." Plaintiff asked where the telemarketer was located, and the telemarketer said Miami, Florida.

41.     Plaintiff told the telemarketer that he was interested in hearing more about the Medicare offerings being solicited.

42.     The telemarketer then transferred Plaintiff to a woman who told Plaintiff that her name was "Iridian." She provided the telephone number 855-538-1325, said she was in Florida, and said her company was called "Enhance Health."

43.     Plaintiff asked how long the company has been in business, but he never got an answer.

44.     Instead, upon transfer of the call, Enhance Health realized that its telemarketer had called a phone number that was on Enhance Health's internal do-not-call list. Enhance Health then played a prerecorded message that stated that Plaintiff's phone number was on its do-not-call list, said "goodbye," and hung up.

45.     Plaintiff did not consent or give prior invitation or permission for any telemarketing call from or on behalf of Enhance.

46.     Most or all of the calls Plaintiff received were made using a predictive dialer or other device that automatically selects phone numbers for calling. There was a telltale beep at the beginning of most or all of the calls Plaintiff received from or on behalf of Enhance Health. On some calls, when Plaintiff answered, he heard a long pause, then a rote tone, and then the caller dropped the call. These calls, including the dropped or "dead air" calls — were made for the purpose of trying to sell Enhance goods and services.

47.     Plaintiff received these improper calls as a direct result of Defendant's failure to maintain company-specific internal do not call policies, practices, and procedures that satisfy the requirements of the TCPA.

48.     Because Defendant's policies, practices, and procedures do not comply with the TCPA, there are undoubtedly others who, like Plaintiff, have received telemarketing calls by or on behalf of Defendant, after they requested not to receive such.

49.     A telemarketing call to sell insurance is the type of interaction where the caller customarily carries authority act on behalf of the insurance company principal by, for example, marketing, writing, and selling insurance policies.

50.     Defendant knows or should have known that its internal do-not-call policies fail to ensure its agents or vendors comply with Enhance's internal do-not-call list. Defendant thus knew or should have known that Plaintiff was likely to receive additional calls on its behalf from Enhance vendors and telemarketers. Enhance also knows that their internal DNC policies do not comply with the TCPA. Nevertheless, Defendant has not changed its policies, practices, or procedures to bring them into compliance on this point.

51.     Defendant had the ability to control the minutiae of its and its vendors' internal DNC compliance, but recklessly or knowingly failed to do so, instead electing to turn a blind eye and accept the illegal sales calls.

52.     Defendant also knows or should have known that vendors generally do not mention their names during calls. Upon information and belief, Defendant *prohibits* most or all telemarketers and lead generator vendors from mentioning their names in marketing solicitations like those Plaintiff and the members of the Classes received.

53.     Vicarious liability is an essential feature of the privacy-protecting provisions of the TCPA. Under applicable law, a seller like Enhance Health is not shielded from liability simply because others violate the law on its behalf and for its benefit. This is so in part because the dealers and lead generators that place illegal calls often are judgment proof and difficult to identify, and sellers like Enhance Health are best positioned to monitor and control their activities. Under these circumstances, and in service of protecting consumers from the nuisance

of unwanted telemarketing, liability is imputed to the more reputable and more financially

solvent sellers — here, Enhance Health.

54.     Because allowing an entity "to avoid potential liability by outsourcing its

telemarketing activities to unsupervised third parties would leave consumers in many cases

without an effective remedy for telemarketing intrusions," the FCC has consistently held that a

corporation or other entity "may be held vicariously liable under federal common law principles

of agency for violations of either section 227(b) or section 227(c) that are committed by third-

party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory

Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (1) (2013) ("May 2013 FCC

Ruling"). *See also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659-661 (4th Cir. 2019)

(affirming class certification and jury finding that Dish Network was vicariously liable for

violations of federal do not call law committed by its dealer).

55.     Plaintiff and the Classes have been damaged by the actions and omissions alleged

here. They were forced to deal with telemarketing calls that they did not consent to, and that they

affirmatively requested not to receive. Their phones were temporarily seized, and the calls were a

nuisance and annoying, wasted time, and represent a public safety threat.

### Class Action Allegations

56.     As authorized by Rule 23(b)(3) and 23(b)(2) of the Federal Rules of Civil

Procedure, Plaintiff brings this action on behalf of himself and the following Classes:

TCPA IDNC Class (Count I): All persons in the United States (i) to whom more
than one call was made for the purpose of encouraging the purchase of Enhance
goods or services (including to find a marketing "lead" for Enhance goods or
services) in any 12-month period since the date four years prior to the filing of this
action, (ii) to a residential telephone number, (iii) where the phone number was on
Enhance's do-not-call list at the time of at least one such call.

National DNC Class (Count II): All non-customers of Enhance within the United

States to whom Enhance or someone on its behalf initiated more than one call for the purpose of encouraging the purchase of goods or services within any 12-month period, at any time on or after the date four years prior to the filing of this action, despite the residential phone number having been registered on the National Do Not Call Registry for more than 31 days, where Enhance lacks any signed, written agreement with the consumer stating that he or she agrees to be contacted by Enhance at the phone number.

Florida Mini-TCPA IDNC Class (Count III): All persons in the United States (i) to whom a call was made for the purpose of encouraging the purchase of Enhance products or services (including to find a marketing "lead" for Enhance goods or services) in any 12-month period since the date four years prior to the filing of this action, (ii) to a residential telephone number, (iii) where the consumer had previously asked Enhance Health or any of their lead generators or telemarketing vendors not to call them.

Florida Mini-TCPA Autodialer Class (Count IV): All persons in the United States to whom any call was made by or on behalf of Enhance Health, using a predictive dialer or other automated system that selects numbers for dialing, on or after July 1, 2021.

57.     Plaintiff is a member of each of these Classes.

58.     Upon information and belief, illegal calls were made by or on behalf of Defendant to telephone numbers belonging to thousands of consumers. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

59.     Plaintiff does not know the exact number of members in the Classes but, given the ease and ubiquity of solicitation telephone call telemarketing, believes the members of the Classes number in the several thousands, if not more.

60.     Upon information and belief, the classes include the telephone numbers of more than 1,000 persons in each of the above-defined class.

61.     Common questions of law or fact exist as to all members of the Classes and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the Classes include but are not limited to:

a.      Whether Defendant made, or caused to be made, illegal telephone calls to Plaintiff and the members of the Classes;

b.      Whether Defendant's DNC practices, policies, and procedures are in compliance with the TCPA;

c.      Whether the equipment used to call Plaintiff and members of the Florida Mini-TCPA Autodialer Class constituted the automated system contemplated under Fla. Stat. § 501.059(8)(a);

d.      Whether Defendant should be held liable for any calls made by third parties; and

e.      Damages, including whether Defendant's violations were willful or knowing such as to justify treble damages under 47 U.S.C. § 227(c)(5).

62.      Plaintiff's claims are typical of the claims of the other members of the Classes. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Classes are the same: Defendant violated the TCPA by causing the phone number of each member of the Classes, including Plaintiff, to be called repeatedly autodialed despite prior requests to stop or despite being on the National Do Not Call Registry, without having instituted proper DNC procedures required under the TCPA.

63.      Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests that might conflict with the interests of the Classes. Plaintiff is interested in pursuing these claims vigorously and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

64.      Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of members of the Classes, such that joinder of all members is impracticable.

65.    The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions might be dispositive of the interests of the Classes, although certain members of the Classes are not parties to such actions.

66.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

67.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making relief appropriate with respect to the Classes as a whole. Prosecution of separate actions by individual members of the Classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

68.    The identity of the Classes is, on information and belief, readily identifiable from Defendant's and their vendors' records.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

69.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70.    The TCPA requires any party that is engaged in telemarketing — including "sellers" who do not make calls themselves — to maintain and honor a written internal do-not-call policy.

71.    Defendant's written do not call policy, as well as its procedures, are insufficient to ensure compliance with the TCPA's internal Do Not Call rules.

72.    Defendant's policy and procedures permit calls to phone numbers that are on the internal DNC list, if the caller has "consent."

73.    Defendant's policy and procedures do not provide for coordination of internal DNC lists among telemarketing or lead vendors, or between the Defendant, and no coordination takes place.

74.    Defendant's policy and procedures do not call for TCPA or IDNC training.

75.    Telemarketing calls made on behalf of Defendant are often spoofed and fail to properly identify Defendant or provide valid contact information.

76.    Defendant violated the TCPA by not having sufficient internal DNC policies, by not following or honoring the policies that they did have, and/or by not sufficiently ensuring that those making the calls on its behalf did the same

77.    Plaintiff and Class members each received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

78.     As a result of these violations, Plaintiff and the TCPA IDNC Class were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop.

79.     The section of the TCPA that confers a private right of action specifically allow for money damages, injunctive relief, or "both." 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the TCPA IDNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the TCPA IDNC Class as alleged herein, and the appointment of Plaintiff as the representative of the TCPA IDNC Class and Plaintiff's counsel as Counsel for the TCPA IDNC Class;

B.     A declaration that Defendant violated the TCPA as to Plaintiff and the TCPA IDNC Class;

C.     An injunction to prevent further violations;

D.     Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(National Do Not Call Registry Violations)**

80.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

81.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

82.     Defendant violated the TCPA by causing multiple telephone solicitations to be initiated to Plaintiff and the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

83.     Defendant also violated the TCPA by failing to adhere to its own policies concerning DNC.

84.     These violations were willful or knowing.

85.     As a result of Defendant's violations of the TCPA's national do-not-call rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

86.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the National DNC Class as alleged herein;

B.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

C.     Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at ensuring the prevention of TCPA violations in the future;

D.     Attorneys' fees and costs, as permitted by law; and

E.     Such other or further relief as the Court deems just and proper.

### COUNT III
### Violations of the Florida Mini TCPA, Fla. Stat. § 501.059(5)

87.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

88.     Substantial amendments to Florida's "mini-TCPA" became effective July 1, 2021, to prohibit unsolicited telemarketing

89.     The Florida Mini-TCPA states: "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission."  F.S.A. § 501.059(5).

90.     Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a), in that he was the regular user of the telephone number that received calls from or on behalf of Defendant.

91.     Defendant is, and at all times relevant hereto was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(i).

92.     Defendant's policy, practice and procedures improperly do not call for coordination of internal DNC lists among telemarketing or lead vendors, or between the Defendant, and no coordination takes place.

93.     To the contrary, Defendant's policy, practice and procedures call for making telemarketing calls first, and then checking whether the phone number is on the DNC list later.

94.     Telemarketing calls made on behalf of Defendant are often spoofed and fail to properly identify Defendant or provide valid contact information.

95.     In addition to being a violation of 47 C.F.R. § 64.1200(d), it is a crime to spoof telephone numbers on telemarketing calls, and violators are subject to both a "criminal fine," 47 U.S.C. § 227(e)(5)(B), and possible imprisonment. 47 U.S.C § 501. It is also a crime to knowingly or willfully accept business derived from such.

18

96.     As a result of these violations, Plaintiff and the Florida Mini-TCPA IDNC Class were damaged, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop.

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Florida Mini-TCPA IDNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the Florida Mini-TCPA IDNC Class as alleged herein, and the appointment of Plaintiff as the representative of the Florida Mini-TCPA IDNC Class and Plaintiff's counsel as Counsel for the Florida Mini-TCPA IDNC Class;

B.     A declaration that Defendant violated the Florida Mini-TCPA as to Plaintiff and the Florida Mini-TCPA IDNC Class;

C.     An injunction to prevent further violations;

D.     Damages;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

## COUNT IV
### Violations of the Florida Mini TCPA, Fla. Stat. § 501.059(8)(a)

97.     Plaintiff re-alleges and incorporates the foregoing allegations.

98.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be

used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

99.     Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of the telephone number that received calls from or on behalf of Defendant.

100.     Defendant is, and at all times relevant hereto was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(i) in that it does business in the state of Florida and causes telephonic sales calls to be made using recorded message devices to consumers in the state of Florida. § 501.509(1)(e).

101.     "Prior express written consent" means an agreement in writing that:

1.   Bears the signature of the called party;

2.   Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.   Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.   Includes a clear and conspicuous disclosure informing the called party that:

a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system

for the selection or dialing of telephone numbers or the playing of a recorded

message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement

or to agree to enter into such an agreement as a condition of purchasing any

property, goods, or services.  Fla. Stat. § 501.059(1)(g).

102.     Defendant failed to secure prior express written consent from Plaintiff and the

Class members.

103.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic

sales calls to be made to Plaintiff and the Class members without the prior express written

consent of Plaintiff and the Class members.

104.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff

and the Florida Mini-TCPA Autodialer Class members to be made utilizing an automated system

for the selection and dialing of telephone numbers.

105.     As a result of these violations, Plaintiff and the Florida Mini-TCPA Autodialer

Class were damaged, in that they received non-privileged and unsolicited telemarketing calls that

invaded their privacy, after having requested that calls stop.

106.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the

FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00

in damages for each violation. Plaintiff and the Class members are also entitled to an injunction

against future calls. *Id.*

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Florida Mini-

TCPA Autodialer Class, respectfully requests that the Court enter judgment against Defendant

for:

21

A.      Certification of the Florida Mini-TCPA Autodialer Class as alleged herein, and the appointment of Plaintiff as the representative of the Florida Mini-TCPA Autodialer Class and Plaintiff's counsel as Counsel for the Florida Mini-TCPA Autodialer Class;

B.      A declaration that Defendant violated the TCPA and mini TCPA as to Plaintiff and the Florida Mini-TCPA Autodialer Class;

C.      An injunction to prevent further violations;

D.      Damages;

F.      Costs, expenses, and attorneys' fees, to the extent permitted by law; and

G.      Such other or further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

Dated: August 5, 2022

ROBERT HOSSFELD, individually and on behalf of classes of others similarly situated

By:

> */s/ James L. Kauffman*
> James L. Kauffman
> Florida Bar No. 0012915
> BAILEY & GLASSER, LLP
> 1055 Thomas Jefferson St. NW, Suite 540
> Washington, DC 20007
> Telephone: (202) 463-2101
> Email: jkauffman@baileyglasser.com
>
> Benjamin J. Hogan*
> BAILEY & GLASSER, LLP
> 6 Canyon Rd., Suite 200
> Morgantown, WV 26508
> Telephone: (304) 594-0087
> Email: bhogan@baileyglasser.com
>
> Alexander H. Burke*
> Daniel J. Marovitch*
> BURKE LAW OFFICES, LLC
> 909 Davis Street, Suite 500
> Evanston, IL 60201
> Telephone: (312) 729-5288
> Email: aburke@burkelawllc.com
> Email: dmarovitch@burkelawllc.com
>
> *Counsel for Plaintiff*
>
> *pending *pro hac vice* admission